**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PATRICIA KILBY-ROBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-2200 (TSC) |
| | ) | |
| ELISABETH DEVOS, | ) | |
| Secretary, U.S. Department of Education, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Patricia Kilby-Robb brings this suit under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). (Compl. ¶¶ 18–35). Defendant Secretary of the U.S. Department of Education (the "Department") now moves for summary judgment. (ECF No. 14). For the reasons set forth below, the court GRANTS Defendant's motion for summary judgment.

## I.    BACKGROUND

Plaintiff Patricia Kilby-Robb is an African American female who was over sixty years old at the time of the alleged events in this case. (Compl. ¶ 4). Before starting at the Department, she worked as a school principal, assistant principal, and community education director. (Kilby-Robb Decl. ¶ 3 (Pl. Ex. A)). Since 2000, Plaintiff has been employed by the Department in various offices as an Education Program Specialist at the GS-13, Step 10 pay level. (*Id.* ¶ 2). At the time of the alleged events of this case, Plaintiff worked in the Department's Office of Innovation and Improvement ("OII"), primarily in the Parental Options and Information office with the Parental Information and Resource Center ("PIRC") program.

1

(*Id.*).  Beginning in 2009, Plaintiff transferred to the Charter Schools Program ("CSP") within

OII.  (*Id.*).  During her employment with the Department before the events in this case, Plaintiff

had filed approximately four complaints of discrimination against the Department.  (*Id.* ¶ 4).  Of

these complaints, Plaintiff alleges that one case was closed in September 2005, the second was

closed in April 2010, and the remaining cases were pending before an EEOC administrative

judge at the times of the relevant events in this matter.  (*Id.*).

      Plaintiff alleges that Defendant discriminated and retaliated against her in several discrete

incidents between 2008 and 2010.  These include a 2008 performance rating of "successful," a

2009 desk audit determination that Plaintiff should remain at the GS-13 level, an office meeting

in February 2009, the removal of some of her job duties in early 2009, and five job application

denials in 2009 and 2010.  Plaintiff filed the present suit in December 2014, alleging violations

of Title VII and the ADEA for discrimination on the basis of race and age.

## II.   SUMMARY JUDGMENT STANDARD

      Summary judgment is appropriate where there is no disputed genuine issue of material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In determining whether a genuine issue of

material fact exists, the court must view all facts in the light most favorable to the nonmoving

party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)

(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  The movant must rely on

record materials to demonstrate the absence of any genuinely disputed issues of material fact.

Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 332.  A fact is material if "a dispute over it

might affect the outcome of a suit," and an issue is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Holcomb v. Powell*, 433 F.3d

889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986))

(internal quotation marks omitted).  The non-movant is "required to provide evidence that would

permit a reasonable jury to find" in her favor.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242

(D.C. Cir. 1987) (citations omitted).  Generally, a plaintiff must provide more than her

conclusory statements to oppose a motion for summary judgment, as "[c]onclusory allegations

made in affidavits opposing a motion for summary judgment are insufficient to create a genuine

issue of material fact."  *Sage v. Broad. Publ'ns, Inc.*, 997 F. Supp. 49, 53 (D.D.C. 1998).

## III.     DISCUSSION

### A.   Race and Age Discrimination Claims

#### 1.   Legal Framework

Title VII bars a federal agency from discriminating against any employee based on her

race.  42 U.S.C. § 2000e–16(a).  The ADEA similarly protects federal employees over forty

years old from discrimination based on their age.  29 U.S.C. § 633a(a).  The court analyzes both

Title VII and ADEA claims under the well-established burden-shifting framework of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C.

Cir. 2006); *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  Under this framework, the

plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case

of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).  To

establish a prima facie showing, the plaintiff must demonstrate that she (1) is a member of a

protected class and (2) suffered an adverse employment action, and (3) that the action gives rise

to an inference of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.

In the discrimination context, an adverse employment action is "'a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  The D.C. Circuit has articulated that while "'purely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002)).  Moreover, the Supreme Court has stated that "[a] tangible employment action in most cases [is one that] inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998).  Furthermore, under the third element of the prima facie showing, an adverse employment action normally gives rise to an inference of discrimination only "if otherwise unexplained, [it was] more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254.

While the plaintiff maintains the burden of persuasion at all times, *id.* at 253, the burden of proof then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action in question],'" *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Burdine*, 450 U.S. at 253).  In asserting a legitimate, non-discriminatory justification for the challenged actions, the defendant "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254 (citation omitted). Ordinarily, the burden then shifts back to the plaintiff to demonstrate that the asserted reason is a pretext for discrimination. *Id.* at 253.  However, where the defendant provides a legitimate, non-

discriminatory explanation for its actions at the summary judgment stage, "the district court need

not—and should not—decide whether the plaintiff actually made out a prima facie case under

*McDonnell Douglas*." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir.

2008). Instead, the court's focus is whether the plaintiff produced "sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual

reason and that the employer intentionally discriminated against the [plaintiff] on [a prohibited

basis]." *Id.*; *see also Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

2.   Individual Incidents

a.   *2008 Performance Rating*

Plaintiff alleges that the Department discriminated against her when she received a lower

performance rating. (Compl. ¶¶ 22, 28, 34). During the 2008 performance rating period, which

covered October 2007 through September 2008, Plaintiff's job performance was rated by her

first-line supervisor, Steven Brockhouse, a white male, and the rating was affirmed by her

second-line supervisor, Margo Anderson, a white female. (Def. Ex. 7 (2008 Performance

Rating); Def Ex. 74, ¶ 9 (Decl. of Margo Anderson)). Brockhouse rated Plaintiff as successful,

highly successful, or outstanding in a number of categories, and Plaintiff's overall rating of

record was "satisfactory." (*Id.*; *see also* Def. Ex. 8 at 26 (defining ratings)).

According to Plaintiff's performance report, provided by Defendant, Plaintiff was rated

as satisfactory because she was "inconsistent in providing reports regarding program status," she

took "almost no initiative to provide reports and updates unless they [were] specifically

requested," she did not "regularly or effectively provide written communication to provide

information that [was] needed to update and support [OII] concerning PIRC program activities,"

she "rarely contribute[d] updates about the PIRC program for weekly reports and she [did] not

consistently keep senior OII staff informed of significant PIRC-related activities and developments," her "work products fail[ed] to meet acceptable standards," "the annual performance report [did] not conform to approved requirements," and "[a]lthough [she] had been advised that the performance report appeared to be incomplete . . . no corrective action was taken on her part." (Def. Ex. 7). Defendant additionally submitted the declaration of Margo Anderson, Plaintiff's second-line supervisor, who stated:

> In general, Ms. Kilby-Robb did not effectively communicate with OII senior staff and often withheld information. At times, she did not inform her supervisors about upcoming teleconferences and meetings on a timely basis or share agendas for meetings until specifically instructed to do so. Although OII management had previously raised concerns with her about her need to keep her supervisors and OII senior staff informed about PIRC activities, communication[] problems within OII continued during the 2008 rating period.

(Def. Ex. 74, ¶ 7 (Anderson Decl.)). Defendant also submitted several e-mails from 2007 and 2008 discussing the issues with Plaintiff's drafting of an annual performance report.

Because the Defendant has offered legitimate, non-discriminatory reasons for the "satisfactory" performance rating, the burden shifts to Plaintiff to establish that these reasons are merely pretext for discrimination. *Brady*, 520 F.3d at 494. Plaintiff fails to do so. To rebut Defendant's explanation, she cites only to her own declaration and her own EEO affidavit, in which she states that during her mid-year review she was told by Brockhouse that she "was doing a perfect job and needed to make no improvements" and was not told thereafter that there were any issues with her performance. (Kilby-Robb Decl. ¶ 12; Pl. Ex. C at 3 (Oct. 2009 Kilby-Robb EEO Aff.)). She also states, without additional explanation, that "the APR did conform to, and in fact exceeded, approved requirements and was complete." (Kilby Robb Decl. ¶ 13). Plaintiff did not depose Brockhouse or Anderson about their performance ratings, and she offered no

corroborating evidence for her own statements regarding her work performance generally or with respect to the annual performance report specifically.

The court finds that Plaintiff has failed to present evidence sufficient to establish that there are genuine issues of material fact regarding whether Defendant discriminated against her based on her race or age during her performance review.  Therefore, the court GRANTS Defendant's motion as to Plaintiff's discrimination claims involving the 2008 performance rating.

### b.  2008 Desk Audit

Plaintiff alleges that Defendant discriminated against her when, following a desk audit in December 2008, her position was not reclassified from a GS-13 position to a GS-14.  (Compl. ¶¶ 22, 28, 34).  Plaintiff claims that her first-line supervisor at that time, Dean Kern, a white male, intentionally provided false information about her job duties to Sonja Brown, the Human Resources Specialist conducting the desk audit.  (*Id.* ¶ 12; Kilby-Robb Decl. ¶¶ 15–16).  According to Brown's memorandum regarding the desk audit, Plaintiff and Kern presented differing accounts regarding the scope of Plaintiff's job responsibilities, including to what extent Plaintiff traveled, served as an expert for the PIRC program, spoke for the agency, and participated in reviewing or authoring publications.  (Def. Ex. 14 (Jan. 14, 2009 Memorandum re Desk Audit)).  Defendant argues that Kern's description of Plaintiff's work was not discriminatory, but that he Kern simply disagreed that Plaintiff's position should be reclassified to the GS-14 level because the same duties had not been performed at the GS-14 level before.  (Def. Ex. 9 at 3–4 (Nov. 20, 2009 EEO Aff. of Dean Kern)).  Kern also stated that he disagreed with Plaintiff's characterization of herself as the "national expert" for the PIRC program because no such position or designation existed.  (*Id.* at 4).

To satisfy her burden to establish that Defendant's proffered explanation is merely a pretext for discrimination, *Brady*, 520 F.3d at 494, Plaintiff again relies only on her declaration, which asserts that "[b]ased on Mr. Kern's prior comments that Ms. Anderson hated me and his and Ms. Anderson's continual mistreatment of me, I believe that Kern understated my duties and responsibilities because Anderson had made it known to Kern that I should not be allowed to be promoted."  (Kilby-Robb Decl. ¶ 15).  Plaintiff offers no corroboration for her statement that Kern told her that Anderson "hated" her, nor does she offer any evidence at all to rebut the legitimacy of Kern's statements to the Human Resources Specialist during the desk audit.  While she disputes her job responsibilities, the desk audit memorandum does credit her as the "expert for PIRC" who "provides high level technical assistance to research organizations and national parent teacher associations."  (Def. Ex. 14 at 3–5).  Although Plaintiff offers her subjective belief that Kern "oversimplified and misrepresented the full scope and depth of [her] duties," she provides no evidence that this was the case, and further offers no basis to infer that any dispute about her job duties was intentional and discriminatory.  (Kilby-Robb Decl. ¶ 16).

Despite Plaintiff's assertion that she "is entitled to the inference that Mr. Kern's misrepresentations were not the result of some innocent misunderstanding of his subordinate's duties," (Pl. Mem. at 17), she offers the court no evidence for her allegation.  The court therefore concludes that Plaintiff has failed to present evidence sufficient to raise a genuine issue of material fact as to whether Defendant discriminated against her in declining to reclassify her position as a GS-14.  Defendant's motion on this claim is GRANTED.

### c.   *Interference with COR Duties*

Next, Plaintiff alleges that following her appeal of her desk audit, Kern discriminated and retaliated against her "by taking away all her duties and responsibilities, including her national

PIRC and [Contract Officer Representative ("COR")] duties" between January and April 2009. (Compl. ¶¶ 12, 22, 28, 34; Kilby-Robb Decl. ¶ 16).  Plaintiff alleges that Kern, her supervisor, performed these work duties between January and April, and then in April he reassigned them to Dr. Anna Hinton, who was appointed the Deputy Director of Parental Options and Information. (Compl. ¶ 13).  She additionally alleges, without elaboration or explanation, that Defendant's actions were "a violation of federal law."  (*Id.*).

Defendant argues that Plaintiff has failed to establish a *prima facie* showing of discrimination on this claim because she provides no evidence that she suffered an adverse employment action or that the action gives rise to an inference of discrimination.  The court agrees in part.  As explained above, to establish that this reassignment was an adverse employment action under Title VII or the ADEA, Plaintiff must show that there was an "objectively tangible harm," *Holcomb*, 433 F.3d at 902, which "in most cases inflicts direct economic harm," *Burlington Indus.*, 524 U.S. at 762.  Though Plaintiff concedes she remained at the same pay grade, GS-13 Step 10, her "claim of an adverse employment action [may] rest on a significant change in [her] job responsibilities." *Forkkio*, 306 F.3d at 1131.  Here, it is undisputed that Plaintiff was the COR for the Department's contract with the Southwest Educational Development Library, and that in April 2009 Hinton was re-assigned as the COR when she was appointed the Deputy Director of Parental Options and Information.  Plaintiff provides the court with no evidence to conclude that the loss of these duties amounted to a significant change in her job responsibilities, as the remainder of her work responsibilities remained intact.

However, even assuming that this reassignment was an adverse employment action, there is no basis for an interference of racial discrimination, as Plaintiff states in her Complaint that

Hinton, to whom the COR position was reassigned, is also African American.  (Compl. ¶ 13).

Without some other evidence, Plaintiff fails to establish the final element of the prima facie

showing that this decision was based on her race.  Defendant's motion is therefore GRANTED

with respect to Plaintiff's race discrimination claim based on the interference with COR duties.

With respect to her allegation of age discrimination, the Complaint alleges that Plaintiff

was over sixty years old and Hinton was under forty years old, (*id.*), which raises an inference of

discrimination.  The burden therefore shifts to the Defendant to proffer a legitimate reason for its

actions.  Defendant proffers Kern's affidavit, in which he states that the COR duties were

transferred to Hinton because "[a]s Deputy Director of the POI office, it was incumbent for Dr.

Hinton to have direct access and supervision over technical assistance contracts in order to

strengthen this office's ability to provide oversight for Department activities related to

educational choice programs and to support community organizations that effectively inform

parents of their options."  (Def. Ex. 9 at 5).  Having provided legitimate, non-discriminatory

justification for its action, the burden reverts back to Plaintiff to establish that this explanation is

mere pretext.[1]  *Brady*, 520 F.3d at 494.  Instead, she only alleges--without support--that the

reassignment was related only to Kern's "consistent hostility" towards her.  Plaintiff has

therefore failed to establish a triable issue of fact with respect to her age discrimination claim,

and Defendant's motion is GRANTED on this claim.

     *d.*   *February 2009 Meeting*

Plaintiff alleges that in a February 2009 meeting with Employee Relations and a union

---

[1]  In addition to arguing that it had a legitimate basis for the reassignment to Hinton, Defendant
also disputes that it interfered with Plaintiff's responsibilities between January and April, and
provided documentary and testimonial evidence that Plaintiff continued to act in the role of COR
during that time.  (*See* Def. Exs. 24, 25, 26, 30, 31, 33, 34).

representative, Kern "accused" her "of violating agency regulations in the development of the

PIRC annual performance report and of interacting with the Office of Inspector General in

violation of law and regulation." (Compl. ¶ 14). Plaintiff alleged that this action was

discrimination on the basis of race and age and retaliation. (*Id.* ¶¶ 22, 28, 34). Defendant argues

that Plaintiff has failed to establish a prima facie showing of discrimination for this allegation, as

no further action was taken after the meeting and even "public humiliation or loss of reputation

[do] not constitute an adverse action." *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002).

Plaintiff did not address Defendant's arguments regarding the February 2009 meeting, and

therefore the court treats the arguments as conceded. The court GRANTS Defendant's motion

with respect to the February 2009 meeting.

### e.   *Non-Selection for Employment Positions*

Plaintiff additionally alleges that Defendant discriminated against her when she was not

selected for five positions in 2009 and 2010. (Compl. ¶¶ 15–17, 22, 28, 34). Each position is

assessed separately below.

### i.   Education Program Specialist (OII-2009-0001)

In early 2009, Plaintiff applied for a GS-14 position as the Program Manager for the

Magnet Schools Assistance Program ("MSAP") and Full-Service Communications Schools

program ("FSCS"). She was interviewed in February 2009, along with two other top candidates,

Jill Staton and Brian Lekander, by a panel of three individuals at the Department. (Def. Exs. 44

(Applicant Listing Report), 47 (interview panel members' interview note summaries)).

Following these interviews, the panel recommended Staton, a white woman, for the position, and

Kern, as the selecting official, selected Staton based on this recommendation. (Def. Ex. 47 at 7;

Def. Ex. 48 (Staton Selection Memorandum)). Plaintiff alleges that Defendant's non-selection of

her for the position was discrimination based on her race and age.

Defendant offers a robust description of the Department's decision-making process and the factors and qualifications considered, both before and after the interview.  There is little question that both Plaintiff and Staton were highly qualified for the position and merited an interview.  However, the Department gave weight to Staton's experience with the Department, where she had worked since 1991, including in leadership roles with the FSCS and MSAP programs the candidates were seeking to lead, since 2007.  (Def. Ex. 45 (Staton Application)).  While Plaintiff had worked at the Department since 2000 and also had leadership experience (*see* Def. Ex. 46 (Plaintiff's Application)), the interview panel determined that Staton's direct experience made her more qualified and better suited.  The interview panel's notes also explained that both candidates gave strong interviews in response to identical questions, but Plaintiff "did not always offer possible solutions for addressing [] challenges" and "[n]ot all responses to some of the . . . questions were as coherent as they could have been and she seemed to struggle with her response on program indicators."  (Def. Ex. 47 at 3; *see also* Def. Ex. 82 (interview questions)).  The panel was more impressed with Staton's interview answers.  (*Id.* at 4–5).

Because Defendant has articulated legitimate non-discriminatory reasons for selecting Staton over Plaintiff for the position, the burden shifts to Plaintiff to establish that these reasons are merely pretext for discrimination.  *Brady*, 520 F.3d at 494.  Plaintiff proffers only her declaration that she was more qualified for the position.  (Kilby-Robb Decl. ¶ 21).  While "qualifications evidence may suffice, at least in some circumstances," to demonstrate pretext, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006), the evidence must be such that "a factfinder [could] conclude that a reasonable employer would have found the plaintiff to be significantly

better qualified for the job," *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en

banc).  Thus, to create an inference that the proffered explanation was pretext, Plaintiff must

show that she was "substantially more qualified" than Staton for the position.  *Hamilton v.*

*Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012).  Plaintiff has failed to do so here.  She presents

the court with a significant amount of work experience that made her as qualified for the position

as Staton; indeed, the Department clearly recognized this as well, which is why both were

interviewed as top candidates.  Beyond this, however, Plaintiff has not presented any evidence to

establish she was *substantially more* qualified than Staton.  Plaintiff also failed to respond to

Defendant's assertions regarding the candidates' interview performances, instead noting that

"[s]hortly after the interview, members of the interview panel congratulated [her] as if she had

received the promotion and praised her for how well she answered the questions in her interview

and how knowledgeable she was," and further stating that when she later asked a panel member

why she was not selected, she was told "You know why," allegedly referring to prior EEO

activity.  (Pl. Mem. at 26–27 (citing Pl. Ex. B (Plaintiff's Interrogatory Responses))).

When the qualifications between the plaintiff and the person selected for the position are

close, the court "must assume that a reasonable juror who might disagree with the employer's

decision, but would find the question close, would not usually infer discrimination on the basis

of comparison of [the] qualifications alone."  *Aka*, 156 F.3d at 1294.  The court's role is not, as

Plaintiff would have it, to reconsider all personnel decisions with which Plaintiff disagrees on the

merits and determine whether Plaintiff should have been selected instead.  In the court's view,

Plaintiff has not proffered enough evidence for a jury to conclude that Defendant's hiring

explanation was mere pretext for discrimination.  Therefore, Defendant's motion is GRANTED

with respect to Plaintiff's discrimination claims for this job non-selection.

ii.   Supervisory Education Program Specialist (OII-2010-0021)

In 2010, Plaintiff applied for another GS-14 position, which involved serving as a team leader for teacher quality grant programs, including the School Leadership program, Teacher Quality Partnership, and Troops to Teachers.  (Def. Exs. 54, 61 (job postings)).  As with the previous position, Plaintiff was considered a top candidate for the position and received an interview.  (Def. Ex. 64 (Selection Memorandum)).  However, the Department again chose another candidate for the position, selecting Beatriz Ceja instead of Plaintiff.  (*Id.*).  Defendant asserts that Ceja was ultimately selected because she had more direct experience; at the time of her selection, Ceja had been working in the Teacher Quality Partnership office for almost seven years, and she had already been serving as the Team Lead for the School Leadership Program and Interim Team Lead for the Transition to Teaching program.  (Def. Exs. 64, 66 at 2, 67).  Ceja also performed better than Plaintiff in her interview, as the panel noted that she had clear understanding of the grant processes and providing technical assistance to applicants and grantees.  (Def. Ex. 64).  By contrast, the panel found that Plaintiff's interview responses were "meandering and not always on target."  (Def. Ex. 63 at 3).

Once Defendant has articulated legitimate reasons for selecting Ceja over Plaintiff, the burden shifts to Plaintiff to establish evidence that these reasons are merely pretext.  *Brady*, 520 F.3d at 494.  As above, Plaintiff again focuses on her own qualifications.  (Compl. ¶ 17).  However, the position was to serve as a Team Lead in the Teacher Quality Partnership division, and at the time of her application Plaintiff had no experience working in that division, while Ceja had years of directly relevant experience.  (Def Exs. 54, 61, 66 at 2, 83).  Plaintiff offers no evidence to establish that she was substantially more qualified for the position, and she therefore fails to provide any evidence to raise a triable issue of fact as to whether the Department's

selection of Ceja was discriminatory.  The court GRANTS Defendant's motion as to Plaintiff's discrimination claims involving this position.

### iii.  Additional Positions

Plaintiff alleges discrimination and retaliation in her non-selection for three other positions.  Of these, two were at the GS-15 level:  Supervisory Education Program Specialist (OII-2009-0002) and Supervisory Management and Program Analyst (OII-2010-0020).  With respect to each of these positions, Defendant argues that Plaintiff has failed to establish the prima facie elements because she has not, and cannot, allege that she was actually qualified for either of these positions.  Under broadly applicable federal regulations, "[c]andidates for advancement to a position at GS-12 and above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled." 5 C.F.R. § 300.604(a). Therefore, in order to be qualified and eligible to apply for either of these job postings, Plaintiff must have worked at the GS-14 level for at least fifty-two weeks.  There is no dispute that Plaintiff has worked only at the GS-13 level during her tenure with the Department.  Defendant asserts that because Plaintiff was not qualified to apply, her name was not submitted by the Human Resources office to Anderson, the selecting officer, and therefore Plaintiff was not considered.  (Def. Exs. 70, 71).

Plaintiff alleges that the two position announcements were drafted in such a way as to exclude her from consideration because if the positions were "open to all Recruiting Sources" then the time-in-grade requirement would not apply.  (Pl. Mem. at 32).  This Circuit has held that inconsistencies or irregularities in an employer's established hiring policies may support a finding of discrimination.  *Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010); *Lane v. Vasquez*, 961 F. Supp. 2d 55, 67 (D.D.C. 2013).  "[T]he adherence to or departure from internal hiring

procedures is a factor that the trier of fact may deem probative and choose to consider in

determining the true motivation behind the hiring decision of the prospective employer."

*Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982).  However, Plaintiff proffers no

evidence that the time-in-grade requirement of 5 C.F.R. § 300.604(a) was not a normal

requirement for GS-15 positions in the Department, and therefore she has failed to raise a triable

issue of whether Defendant's job posting and hiring for these two positions was discriminatory.

Defendant's motion is GRANTED with respect to Plaintiff's discrimination claims for each of

these two positions.

Finally, with respect to the Supervisory Education Program Specialist (OII-2010-0013)

position, Defendant argues that Plaintiff was not selected because she never submitted an

application, the selecting official, Peggi Zelinko, never received the application or Plaintiff's

name on the "certificate of eligible candidates for consideration" and she was therefore not

considered.  (*See* Def. Ex. 55 at 11; Def. Ex. 58).  Plaintiff alleges in her Complaint that the

electronic system used by the Department to submit applications "would not accept her

application" when she attempted to submit it (Compl. ¶ 17; Def. Ex. 57 at 61), and the

Defendant's refusal to consider her application despite the technical issues was discriminatory.

However, she presents no evidence that other individuals were unable to submit applications

using the Department's computer system, nor does she provide evidence that other employees

were permitted to submit late applications, while she was not, which could raise an inference of

discrimination.  While she claims that younger employees had been given special training on the

application system, she offers only her own interrogatory responses as support for that assertion,

which is insufficient evidence to raise a triable issue of discrimination.  Because Plaintiff has

failed to establish a prima facie showing of discrimination, the court GRANTS Defendant's

motion for her discrimination claims for this position.

**B.   Retaliation Claims**

Plaintiff alleges that the Department's actions described above were taken in retaliation for her protected EEO activity.  (Compl. ¶¶ 24–29).  To prevail on a retaliation claim, "the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).  In the retaliation context, a "materially adverse" action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  The parties do not dispute that Plaintiff engaged in protected EEO activity or that in the retaliation context the alleged incidents in this case are materially adverse actions, given that in retaliation claims these "encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch*, 550 F.3d at 1198 n.4.  Instead, the parties' dispute focuses on the causal connection between Plaintiff's past EEO activity and these actions.

A plaintiff may establish a causal link between her past protected activity and the alleged acts of retaliation with circumstantial evidence, such as temporal proximity between the events. *Vasquez*, 961 F. Supp. 2d at 67.  However, "to rely on temporal proximity to prove causal relation, the temporal proximity must be 'very close'—generally less than three months.  And when the defendant gives a non-discriminatory reason for his actions, 'positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine.'" *Id.* at 67–68 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) and quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)).  While Plaintiff may rely on such proximity evidence, she must still present sufficient evidence from which a reasonable jury

could find it was more likely than not that retaliation was the actual motive for the employer's actions. *See Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

With respect to Plaintiff's non-selection for the two positions for which she was interviewed, OII-2009-0001 and OII-2010-0021, Defendant provided affidavits from each of the six panelists who interviewed her that none knew of her EEO activity before or after the interviews. (*See* Def. Ex. 39 at 2; Def. Ex. 40 at 1; Def. Ex. 41 at 1; Def. Ex. 56 at 2; Def. Ex. 62 at 2; Def. Ex. 63 at 2). Plaintiff offers nothing to rebut this evidence for the OII-2010-0021 position, but argues that for the OII-2009-0001 position, Kern was the selecting official and knew about her EEO activity. However, the interview panelists, who did not know of her protected activity, recommended Staton, and Kern accepted their recommendation. (Def. Ex. 48). Without additional evidence from Plaintiff, a reasonable jury could not conclude that there was causation between the interview panel's selection and Plaintiff's past protected EEO activity based only on Kern's knowledge. With respect to the remaining three positions, as described above, the court concluded that Plaintiff failed to establish the necessary prima facie elements that she was eligible for the positions. Therefore, the court concludes that there is insufficient evidence to support a retaliation claim for these non-selections.

Plaintiff's remaining retaliation claims relate to the 2008 performance rating, the 2009 desk audit, a February 2009 meeting, and the reassignment of COR duties. Plaintiff has offered no evidence apart from temporal proximity that these events were related to her past protected EEO activity. Defendant argues that the temporal link is too attenuated because two years had passed between the most recent EEO activity (a February 2006 hearing) and her 2008 performance rating. (Def. Ex. 89 (2006 EEO hearing transcript)). Plaintiff asserts that her EEO activity was still ongoing when the alleged incidents took place in 2008 and 2009. (Kilby-Robb

Decl. ¶ 4; Pl Mem. at 12).  While this dispute may raise a triable issue as to the possible

inference based on temporal proximity, Defendant has already offered legitimate explanations

for each of these incidents, and, as discussed above, Plaintiff has failed to present evidence from

which a reasonable jury could conclude that the explanations are mere pretext.  In the retaliation

context, "positive evidence beyond mere [temporal] proximity is required to defeat the

presumption that the proffered explanations are genuine." *Woodruff*, 482 F.3d at 530.  Because

Plaintiff has failed to provide the court with any additional evidence supporting a finding of

retaliation, the court will GRANT Defendant's motion as to the remaining retaliation allegations.

### C.   Hostile Work Environment Claims

Plaintiff alleges that her discrimination and retaliation claims, taken together, amount to a

hostile work environment.  (Compl. ¶¶ 22, 28, 34).  "To prevail on such a claim, a plaintiff must

show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that

is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment.'"  *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys.,

Inc.*, 510 U.S. 17, 21 (1993)).  "To determine whether a hostile work environment exists, the

court looks to the totality of the circumstances, including the frequency of the discriminatory

conduct, its severity, its offensiveness, and whether it interferes with an employee's work

performance."  *Id.* (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998)).

The court has already concluded that for some of these incidents, Plaintiff did not

establish the prima facie elements of a discrimination or retaliation claim, including whether she

suffered an adverse employment action or whether there was an inference of discrimination.  For

the remaining incidents, the court concluded that Plaintiff failed to offer evidence to show that

Defendant's offered explanations for its actions were merely pretext.  As a result of Plaintiff's

lack of evidence needed to survive summary judgment on her discrimination and retaliation

claims, the court further finds that none of her allegations, considered in isolation or

cumulatively, "show an environment so pervaded with discriminatory abuse as to alter the

conditions of plaintiff's employment." *Williams v. Spencer*, 883 F. Supp. 2d 165, 181 (D.D.C.

2012); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of

important assignments, lowered performance evaluations, and close scrutiny of assignments by

management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary

workplace context.").  Therefore, the court GRANTS Defendant's motion with respect to

Plaintiff's hostile work environment claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


Date:  March 30, 2017


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge